## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Civil Action No.:**

DATA SCAPE LIMITED,

       Plaintiff,

  v.

                           **JURY TRIAL DEMANDED**

DEEZER, INC. and DEEZER, S.A.,

       Defendants.

_____/

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.* in which plaintiff Data Scape Limited ("Plaintiff," "Data Scape") makes the following allegations against defendant Deezer, Inc. ("Defendant"):

## PARTIES

1.       Data Scape is a company organized under the laws of Ireland with its office located at Office 115, 4-5 Burton Hall Road, Sandyford, Dublin 18, Ireland.

2.       On information and belief, Defendant Deezer, Inc. is a Delaware corporation with its principal office at One Alhambra Plaza Miami Florida, 33134. On information and belief, Deezer can be served through its registered agent, Paracorp Incorporated, 2140 S Dupont Hwy. Camden, DE 19934. On information and belief, Defendant Deezer, S.A. is a French entity with its principal office at 12 rue d'Athènes 75009 Paris. On information and belief, Defendant Deezer, S.A. is the corporate parent of Deezer, Inc. Defendants Deezer, Inc. and Deezer, S.A. (collectively "Deezer" or

"Defendant") offers their products and/or services, including those accused herein of infringement, to customers and potential customers located in Florida and in this District.

## JURISDICTION AND VENUE

3.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.     This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within the Southern District of Florida giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.  Defendant, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the asserted patents.

5.     Venue is proper in this district under 28 U.S.C. § 1400(b). Deezer, Inc. is registered to do business, and has its headquarters in this District. Upon information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District. Furthermore, as a foreign entity accused of infringing United States Patents, venue is additionally proper over Deezer, S.A. in this District.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,122,163

6.     Data Scape is the owner by assignment of United States Patent No. 8,122,163 ("the '163 Patent"), entitled "Communication System And Its Method and

2

Communication Apparatus And Its Method." The '163 Patent was duly and legally issued by the United States Patent and Trademark Office on February 21, 2012. A true and correct copy of the '163 Patent is included as Exhibit A.

7.      Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '163 patent, and continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, Deezer online music streaming platform, including Deezer Free, Deezer Premium, Deezer Family, Deezer HiFi, Deezer Student, Deezer Web subscription services and all versions and variations thereof since the issuance of the '163 Patent ("Accused Instrumentalities").

8.      Defendant has directly infringed and continues to infringe the '163 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to its customers.

9.      For example, the Accused Instrumentalities infringe Claim 1 (as well as other claims) of the '163 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

10.     The Accused Instrumentalities include "a communication apparatus comprising a storage unit configured to store content data and associated data of the content data to a storage medium."  For example, the Accused Instrumentalities store tracks, user playlists as well as metadata, features, and tags associated with the stored tracks. *See* e.g.,

https://www.elastic.co/customers/deezer   ("The music catalog is updated all the time as Deezer continuously receives new material from record companies. Rapid updating of the data is also a mission-critical capability at Deezer, to keep the music catalog up to date at all times.").  *See* e.g., Elastic @Deezer by Aurelien Saint Requier, Search Data Scientist available at https://www.slideshare.net/AurelienSaintRequier/elastic-deezer

**Elasticsearch architecture**
Our needs

- Search and recommend
  - 3 millions of artists
  - 5 millions of albums
  - 50 millions of tracks
  - 2 millions of playlists
- Search and recommend content based on
  - metadata  and other features
  - tag description
- New releases should become available in less than 2 hours
- Queries have to respond in less than 100ms

ELASTIC #DEEZER                    8       DEEZER

**Elasticsearch architecture**
Data workflow

ELASTIC #DEEZER                    11       DEEZER

*See* e.g., Story of the algorithms behind Deezer Flow available at
https://www.slideshare.net/recsysfr/story-of-the-algorithms-behind-deezer-flow

4



11.     The Accused Instrumentalities include "a communication unit."   For example, the Accused instrumentalities include a communication unit (e.g., network interface) that communicates musical content to users' devices. *See* e.g., https://www.deezer.com/en/company ("Deezer lets you play the music you just have to hear, instantly. Jump in and explore over 56 million tracks (and counting), and discover artists and tracks you'll love with personalised recommendations from the Deezer Editors. Deezer works across all your devices, both online and offline, with no listening limits. It's music at your fingertips for waking up, getting going, chilling out, living life.").

*See* e.g., https://support.deezer.com/hc/en-gb/articles/115003865685-Audio-Quality.

As another example, the Accused Instrumentalities included a communication unit configured to transmit musical content to users' devices for offline listening mode. *See* e.g.,  https://support.deezer.com/hc/en-gb/articles/115003884605-Listen-offline.   ("By default, the Deezer app will only download your music when you are connected to Wi-Fi to save data." "Deezer paid subscribers can download all their favorite content and listen to it over and over again by accessing the desktop app.")

12.     The Accused Instrumentalities include "a controller configured to control a display unit to display the associated data."  For example, the Accused Instrumentalities displays a user playlist consisting of a collection of musical tracks as well as artist and album data.     *See* e.g.,   https://support.deezer.com/hc/en-gb/articles/115003746149-Creating-and-Adding-to-Playlists (e.g., "Playlists are collections of tracks that you can create for different occasions or to suit your mood.").



*See* Deezer Web Application



*See* Deezer iOS Application.

13.    The Accused Instrumentalities include a controller configured to "make a transfer list of content data based on a user input to the displayed associated data, the transfer list being associated with a predetermined identifier uniquely identifying a predetermined external reproduction apparatus."   For example, the Accused Instrumentalities synchronize newly added tracks in the user's playlist across all devices. As such, when Deezer's web application edit the user's playlist while the user's mobile device is offline, the playlist edits are compared and synced automatically once the user's mobile device is back online.





*See* Deezer iOS Application.



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application. (emphasis added).

Moreover, the Accused Instrumentalities include a predetermined identifier that uniquely identifies mobile devices linked to users' accounts.



*See* Deezer iOS Application.

14.     The Accused Instrumentalities include a controller configured to "determine whether an identifier received by the communication unit is the predetermined identifier."  For example, the Deezer can determine whether a specific user account associated with a device is connected to Deezer's platform. As such, the Accused instrumentalities use the user's email address or Facebook/Google credentials to access their Deezer account.  Moreover, Deezer identifies mobile devices linked to users' accounts



*See* Deezer iOS Application.

15.     The Accused Instrumentalities include a controller configured to "control the transferring of the content data to the predetermined external reproduction apparatus according to the transfer list when the received identifier is the predetermined identifier." For example, when Deezer's web application edits the user's playlist while the user's mobile device is offline, the playlist edits are automatically transmitted to the user's mobile device when it reconnects.





*See* Deezer iOS Application.



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application. (emphasis added).

16.    The Accused Instrumentalities include a controller configured to control "playback of content data with the transfer list so that the content data registered in the transfer list is played back as a unit of playback."   For example, the Accused instrumentalities control playback of songs included in the user's edited playlist.



*See* Deezer iOS Application.

17.    Defendant has had knowledge of the '163 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '163 Patent.

18.    Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '163 Patent. Use of the Accused

Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '163 Patent.

19.     For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '163 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '163 Patent.  Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '163 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Defendant engaged in such inducement to promote the sales of the Accused Instrumentalities, e.g., through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '163 Patent.  Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '163 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '163 Patent. Accordingly, Defendant has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '163 Patent, in violation of 35 U.S.C. § 271(b).

20.     For similar reasons, Defendant also infringes the '163 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the

components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '163 Patent if such combination occurred within the United States. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate Deezer servers) and software (e.g., Deezer application) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to combine multiple Deezer components into an infringing system) outside of the United States.

21.     Defendant has also infringed, and continues to infringe, claims of the '163 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '163 Patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '163, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '163 Patent, in violation of 35 U.S.C. § 271(c).

22.     Defendant also indirectly infringes the '163 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '163 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use,

and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '163 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate Deezer servers) and software (e.g., Deezer application) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendant's own actions or instructions to users in, e.g., combining multiple Deezer components into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

23.    As a result of Defendant's infringement of the '163 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for each Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by each Defendant, together with interest and costs as fixed by the Court.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 7,561,363

24.     Data Scape is the owner by assignment of United States Patent No. 7,561,363 ("the '363 Patent"), entitled "Recording Apparatus, Server Apparatus, Recording Method, Program, And Storage Medium." The '363 Patent was duly and legally issued by the United States Patent and Trademark Office on July 14, 2009. A true and correct copy of the 363 Patent is included as Exhibit B.

25.     Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '363 patent, and continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, Deezer online music streaming platform, including Deezer Free, Deezer Premium, Deezer Family, Deezer HiFi, Deezer Student, Deezer Web subscription services and all versions and variations thereof since the issuance of the '363 Patent ("Accused Instrumentalities").

26.     Defendant has directly infringed and continues to infringe the '363 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to its customers.

27.     For example, the Accused Instrumentalities infringe Claim 6 (as well as other claims) of the '363 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

28. The Accused Instrumentalities include "a data recording apparatus comprising a controller configured to control reading first management data from a first recording medium." For example, the Accused Instrumentalities store tracks, user playlists as well as metadata, features, and tags associated with the stored tracks. *See* e.g., https://www.elastic.co/customers/deezer ("The music catalog is updated all the time as Deezer continuously receives new material from record companies. Rapid updating of the data is also a mission-critical capability at Deezer, to keep the music catalog up to date at all times."). *See* e.g., Elastic @Deezer by Aurelien Saint Requier, Search Data Scientist available at https://www.slideshare.net/AurelienSaintRequier/elastic-deezer

**Elasticsearch architecture**
Our needs

- Search and recommend
  - 3 millions of artists
  - 5 millions of albums
  - 50 millions of tracks
  - 2 millions of playlists
- Search and recommend content based on
  - metadata and other features
  - tag description
- New releases should become available in less than 2 hours
- Queries have to respond in less than 100ms

ELASTIC 4DEEZER     8     DEEZER



*See* e.g., Story of the algorithms behind Deezer Flow available at
https://www.slideshare.net/recsysfr/story-of-the-algorithms-behind-deezer-flow



Moreover, the Accused Instrumentalities read the stored user playlist from the Deezer

database and display it via Deezer web application.



*See* Deezer Web Application.

29.     In the Accused Instrumentalities, the first management data identifies "all tracks of source data recorded on said first recording medium."  For example, the Accused Instrumentalities display user's playlists that identify all the tracks stored by a user.



*See* Deezer Web Application.

30.     The Accused Instrumentalities include "a second recording medium configured to store second management data and files of ripped data."  For example, the Accused Instrumentalities store downloaded tracks and playlists on a mobile device.





*See* Deezer iOS Application.

31.     In the Accused Instrumentalities, the second management data identifies "all of the files of the ripped data recorded on said second recording medium."   For example, the Accused Instrumentalities display on the mobile device via Deezer's mobile application user's playlists that identify all the tracks stored by a user on the mobile device.





*See* Deezer iOS Application.

32.     In the Accused Instrumentalities, "said first management data is compared with second management data to determine whether any of the files of the ripped data recorded on said second recording medium is recorded on said first recording medium." For instance, if a playlist is edited in Deezer's web application to add a new song, Deezer will compare songs in the web and mobile applications and synchronize the newly added song with the user's mobile device.



*See* Deezer iOS Application.



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application. (emphasis added).

33.     In the Accused Instrumentalities, the "controller controls reading one of the tracks of the source data from said first recording medium, said one of the tracks of the source data being read when absent from said second recording medium."  For example, the Accused Instrumentalities read and display tracks in the Deezer's web application that are absent from Deezer's mobile application.



*See* Deezer Web Application. (emphasis added).





*See* Deezer iOS Application.

34.    In the Accused Instrumentalities, "said one of the tracks of source data on said second recording medium becomes one of the files of the ripped data." For example, when Deezer's web application edits the user's playlist while the user's mobile device is offline, the playlist edits are automatically transmitted to the user's mobile device when it reconnects.





*See* Deezer iOS Application.



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application. (emphasis added).

35.     Defendant has had knowledge of the '363 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '363 Patent.

36.     Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and

customary way to infringe the claims of the '363 Patent. Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '363 Patent.

37.    For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '363 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '363 Patent.  Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '363 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Defendant engaged in such inducement to promote the sales of the Accused Instrumentalities, e.g., through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '363 Patent.  Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '363 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '363 Patent. Accordingly, Defendant has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '363 Patent, in violation of 35 U.S.C. § 271(b).

38.     For similar reasons, Defendant also infringes the '363 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '363 Patent if such combination occurred within the United States. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate Deezer servers) and software (e.g., Deezer application) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to combine multiple Deezer components into an infringing system) outside of the United States.

39.     Defendant has also infringed, and continues to infringe, claims of the '363 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '363 Patent, and constitute a material part of the invention.  Defendant knows the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '363, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '363 Patent, in violation of 35 U.S.C. § 271(c).

40.     Defendant also indirectly infringes the '363 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities

that are especially made or especially adapted for use in infringing the '363 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '363 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate Deezer servers) and software (e.g., Deezer application) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendant's own actions or instructions to users in, e.g., combining multiple Deezer components into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

41.     As a result of Defendant's infringement of the '363 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for each Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by each Defendant, together with interest and costs as fixed by the Court.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 10,027,751

42.     Data Scape is the owner by assignment of United States Patent No. 10,027,751 ("the '751 Patent"), entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '751 Patent was duly and legally issued by the United States Patent and Trademark Office on July 17, 2018. A true and correct copy of the '751 Patent is included as Exhibit C.

43.     Defendant has offered for sale, sold and/or imported into the United States products and services that infringe the '751 patent, and continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Defendant's products and services, *e.g.*, Deezer online music streaming platform, including Deezer Free, Deezer Premium, Deezer Family, Deezer HiFi, Deezer Student, Deezer Web subscription services and all versions and variations thereof since the issuance of the '751 Patent ("Accused Instrumentalities").

44.     Defendant has directly infringed and continues to infringe the '751 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through its own use and testing of the Accused Instrumentalities. Defendant uses the Accused Instrumentalities for its own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to its customers.

45.     For example, the Accused Instrumentalities infringe Claim 1 (as well as other claims) of the '751 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

46.     The Accused instrumentalities include "[a] communication apparatus configured to transmit data to an apparatus."  For example, the Accused Instrumentalities communicate musical content from Deezer's catalogue comprising of more than 40 million tracks, radio stations, and Deezer Talk via Deezer application to Windows or Mac desktops and mobile/table devices. *See* e.g., https://www.deezer.com/en/company ("Deezer lets you play the music you just have to hear, instantly. Jump in and explore over 56 million tracks (and counting), and discover artists and tracks you'll love with personalised recommendations from the Deezer Editors. Deezer works across all your devices, both online and offline, with no listening limits. It's music at your fingertips for waking up, getting going, chilling out, living life.") *See*, e.g., https://support.deezer.com/hc/en-gb/articles/360000618605-Download-the-Deezer-app ("The Deezer app is free to download and all users can enjoy our catalog of over 53 million tracks.")

To download the Deezer desktop app for Windows or Mac, follow these steps.

1. Go to **www.deezer.com/download**. If the download doesn't start straight away, click the download button again to retry
2. Open your **Downloads** folder, look for the app. Double-click the app to start the installation process
3. Follow the steps to install the app
4. Once installation is complete, launch the app, login and enjoy

To listen to music on the move, download the Deezer app for your mobile or tablet.

- **Deezer on Android**
- **Deezer on iOS**
- **Deezer on Windows Mobile**

As another example, the Accused Instrumentalities transmit "Subscriber Content" using Deezer's web player via browsers running users' devices or Deezer application installed on users' desktop or mobile/tablet devices.  *See* https://www.deezer.com/legal/cgu ("By

transmitting or submitting any Subscriber Content while using the Site, the Application or the Premium+ Service, you affirm, represent and warrant that such transmission or submission is (a) accurate and not confidential; (b) not in violation of any applicable laws, contractual restrictions or other third party rights, and that you have permission from any third party whose personal information or intellectual property is comprised in the Subscriber Content; (c) free of viruses, adware, spyware, worms or other malicious code; and (d) you acknowledge and agree that any of your personal information within such content will at all times be processed by DEEZER in accordance with its Privacy Policy.")

      47.    The Accused instrumentalities include a communication apparatus comprising "a hardware storage medium configured to store management information of data to be transferred to the apparatus."  For example, the Accused Instrumentalities store user playlists as well as metadata, features, and tags associated with the musical content. *See* e.g., https://www.elastic.co/customers/deezer  ("The music catalog is updated all the time as Deezer continuously receives new material from record companies. Rapid updating of the data is also a mission-critical capability at Deezer, to keep the music catalog up to date at all times.").  *See* e.g., Elastic @Deezer by Aurelien Saint Requier, Search Data Scientist available at https://www.slideshare.net/AurelienSaintRequier/elastic-deezer

### Elasticsearch architecture
Our needs

- Search and recommend
  - 3 millions of artists
  - 5 millions of albums
  - 50 millions of tracks
  - 2 millions of playlists
- Search and recommend content based on
  - metadata  and other features
  - tag description
- New releases should become available in less than 2 hours
- Queries have to respond in less than 100ms

### Elasticsearch architecture
Data workflow



*See* e.g., Story of the algorithms behind Deezer Flow available at
https://www.slideshare.net/recsysfr/story-of-the-algorithms-behind-deezer-flow



48.     The Accused Instrumentalities include a communication apparatus comprising "a communicator configured to communicate data with the apparatus." For example, the Accused instrumentalities include a communicator (e.g., network interface) that communicates musical content to users' devices. *See* e.g., https://www.deezer.com/en/company ("Deezer lets you play the music you just have to hear, instantly. Jump in and explore over 56 million tracks (and counting), and discover artists and tracks you'll love with personalised recommendations from the Deezer Editors. Deezer works across all your devices, both online and offline, with no listening limits. It's music at your fingertips for waking up, getting going, chilling out, living life.").

*See* e.g., https://support.deezer.com/hc/en-gb/articles/115003865685-Audio-Quality.

More specifically, the communicator is configured to adjust the musical content transmission rate, measured in bits per second, based on users' audio quality preferences.

*See* e.g., https://support.deezer.com/hc/en-gb/articles/115003865685-Audio-Quality

Choose your option and a blue tick will appear next to your choice.

## Compact option

**Compact** option means you'll be listening to 128kbit/s on WiFi and on mobile.

## Balanced option

With the **Balanced** option, it will automatically increase the quality of the music when you are connected to WiFi, but keeps your data usage small when you're on your mobile network.

**Balanced** option sound means you'll be listening to 320kbit/s on WiFi but 128kbit/s on mobile.

## Enhanced option

The **Enhanced** option means that you'll have the best quality sound all the time. But remember, this option does use the most mobile data.

**Enhanced** option sound means you'll be listening to 320kbit/s on WiFi and on mobile.

## Custom option

On the **Custom** option you can mix and match the sound qualities how you want.

It also includes a basic audio option (64kbit/s) just in case you're saving your data.

As another example, the Accused Instrumentalities included a communicator configured to transmit musical content to users' devices for offline listening mode. *See* e.g., https://support.deezer.com/hc/en-gb/articles/115003884605-Listen-offline.   ("By default, the Deezer app will only download your music when you are connected to Wi-Fi to save data." "Deezer paid subscribers can download all their favorite content and listen to it over and over again by accessing the desktop app.")

49.    The Accused instrumentalities include a communication apparatus comprising "a detector configured to detect whether the communication apparatus and the apparatus are connected."  For example, the Accused instrumentalities include a network interface configured to detect whether Internet connection is unavailable. As such, when the network connection is available, Deezer iOS application reconnects to synchronize changes made to the user playlist.



*See* Deezer iOS Application.



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application. (emphasis added).

50.     The Accused instrumentalities include a communication apparatus comprising "an editor configured to select certain data to be transferred and to edit the management information based on the selection without regard to the connection of the communication apparatus and the apparatus."  For example, the Accused Instrumentalities provide a mechanize for editing the user's playlist via the web application without regard to the internet connection of the user's mobile devices.



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application.

51.     The Accused instrumentalities include a communication apparatus comprising "a controller configured to control transfer of the selected data stored in the communication apparatus to the apparatus via the communicator based on the management information edited by the editor when the detector detects that the communication apparatus and the apparatus are connected." For example, when Deezer's web application makes edits to the user's playlist while the user's mobile device is offline, the playlist edits are automatically transferred to the user's mobile device when it reconnects to the network.





*See* Deezer iOS Application.



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application. (emphasis added).

52.    The Accused instrumentalities include a communication apparatus comprising a controller configured to "compare the management information edited by the editor with management information of data stored in the apparatus."  For instance, if a playlist is edited in Deezer web application to add a new song, Deezer application running on the mobile device will compare songs in the web and mobile applications and only synchronize the newly added song.



*See* Deezer iOS Application.

36



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application. (emphasis added).

53.     The Accused instrumentalities include a communication apparatus comprising a controller configured to "determine a size of the selected data in the communication apparatus."  For example, the Accused instrumentalities determine a size of stored musical content encoded with different bitrates.  In particular, the Accused instrumentalities allow users to choose the quality of transmitted musical content by selecting a higher bitrate for an improved audio resolution/quality. A higher bitrate allows more data to be stored for every second of uncompressed audio content resulting in a larger file size.  *See* e.g.,  https://support.deezer.com/hc/en-gb/articles/115003865685-Audio-Quality

Choose your option and a blue tick will appear next to your choice.

Compact option

**Compact** option means you'll be listening to 128kbit/s on WiFi and on mobile.

Balanced option

With the **Balanced** option, it will automatically increase the quality of the music when you are connected to WiFi, but keeps your data usage small when you're on your mobile network.

**Balanced** option means you'll be listening to 320kbit/s on WiFi but 128kbit/s on mobile.

Enhanced option

The **Enhanced** option means that you'll have the best quality sound all the time. But remember, this option does use the most mobile data.

**Enhanced** option sound means you'll be listening to 320kbit/s on WiFi and on mobile.

Custom option

On the **Custom** option you can mix and match the sound qualities how you want.

It also includes a basic audio option (64kbit/s) just in case you're saving your data.



*See* Deezer iOS Application.

54.    The Accused instrumentalities include a communication apparatus comprising a controller configured to "transmit data in the communication apparatus based on result of the comparison and the determination." For example, when Deezer's web application edits the user's playlist while the user's mobile device is offline, the playlist edits are automatically transmitted to the user's mobile device when it reconnects.





*See* Deezer iOS Application.



*See* Deezer Web Application. (emphasis added).



*See* Deezer iOS Application. (emphasis added).

55.     Defendant has had knowledge of the '751 Patent and its infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendant will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of the claims of the '751 Patent.

56.     Defendant's affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '751 Patent. Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '751 Patent.

57.     For example, Defendant explains to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of synchronizing settings among multiple devices. Defendant also induces its customers to use the Accused Instrumentalities to infringe other claims of the '751 Patent. Defendant specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '751 Patent.  Defendant performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '751 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement.  On information and belief, Defendant engaged in such inducement to promote the sales of the Accused Instrumentalities, e.g., through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of

the accused products to infringe the '751 Patent. Accordingly, Defendant has induced and continues to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '751 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '751 Patent. Accordingly, Defendant has been (since at least as of filing of the original complaint), and currently is, inducing infringement of the '751 Patent, in violation of 35 U.S.C. § 271(b).

58. For similar reasons, Defendant also infringes the '751 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '751 Patent if such combination occurred within the United States. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate Deezer servers) and software (e.g., Deezer application) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to combine multiple Deezer components into an infringing system) outside of the United States.

59. Defendant has also infringed, and continues to infringe, claims of the '751 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '751 Patent, and constitute a material part of the invention. Defendant knows the components in the Accused Instrumentalities to be especially made or especially

adapted for use in infringement of the '751 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendant has been, and currently is, contributorily infringing the '751 Patent, in violation of 35 U.S.C. § 271(c).

60.     Defendant also indirectly infringes the '751 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '751 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '751 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendant supplies or causes to be supplied in or from the United States all or a substantial portion of the hardware (e.g., separate Deezer servers) and software (e.g., Deezer application) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendant's own actions or instructions to

users in, e.g., combining multiple Deezer components into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

61.    As a result of Defendant's infringement of the '751 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for each Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by each Defendant, together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Data Scape respectfully requests that this Court enter:

a.    A judgment in favor of Plaintiff that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '163 Patent, the '363 Patent, and the '751 Patent (collectively, "asserted patents");

b.    A permanent injunction prohibiting Defendant from further acts of infringement of the asserted patents;

c.    A judgment and order requiring Defendant to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

d.    A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Data Scape, including without limitation, prejudgment and post-judgment interest;

e.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant; and

      f.      Any and all other relief as the Court may deem appropriate and just under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:  September 23, 2019

Respectfully submitted,

By:   /s/ Joshua D. Martin
Joshua D. Martin
Florida Bar No. 028100
Email: josh.martin@johnsonmartinlaw.com
JOHNSON & MARTIN, P.A.
500 West Cypress Road, Suite 430
Fort Lauderdale, Florida 33309
Telephone: (954) 790-6699
Facsimile: (954) 206-0017

Marc A. Fenster (*pro hac vice forthcoming*)
California State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie (*pro hac vice forthcoming*)
California State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian D. Ledahl (*pro hac vice forthcoming*)
California State Bar No. 186579
Email: bledahl@raklaw.com
Paul A. Kroeger (*pro hac vice forthcoming*)
California State Bar No. 229074
Email: pkroeger@raklaw.com
C. Jay Chung (*pro hac vice forthcoming*)
California State Bar No. 252794
Email: jchung@raklaw.com
Philip X. Wang (*pro hac vice forthcoming*)
California State Bar No. 262239
Email: pwang@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991
*Attorneys for Plaintiff, Data Scape Limited*